**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRENDA K. CALDWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:13-cv-01381** |
| | ) | **Judge Crenshaw** |
| **NANCY BERRYHILL,** | ) | **Magistrate Judge Frensley** |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Brenda K. Caldwell's ("Caldwell") Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 15), filed with a Memorandum in Support (Doc. No. 16). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion (Doc. No. 17). On January 12, 2017, this case was referred to Magistrate Judge Frensley (Doc. No. 20). The Court hereby withdraws that referral. (Doc. No. 20.) In addition, upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 10),[1] and for the reasons given below, the Court **DENIES** Caldwell's Motion and the Complaint is hereby **DISMISSED**.

### I.    Introduction

On July 23, 2010 Caldwell filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act, alleging a disability date onset of July 1, 2004. (A.R. 26.) Caldwell later amended her disability onset date to December 31, 2006. (Id.) Her claim was denied at the initial and

---

[1] Referenced hereinafter by page number(s) following the abbreviation "A.R."

reconsideration stages of state agency review. She subsequently requested *de novo* review of her case by an Administrative Law Judge ("ALJ"). The ALJ heard the case on April 1, 2011, when Caldwell appeared with a representative and gave testimony. (Id.) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the matter was taken under advisement until June 26, 2012, when the ALJ issued a written decision finding Caldwell not disabled prior to March 1, 2010. (Id.) That decision contains the following enumerated findings:

1. Caldwell meets the insured status requirements of the Social Security Act through December 31, 2006, the alleged onset date.

2. Caldwell has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date, Caldwell has the following severe impairments: carpal tunnel syndrome; fibromyalgia; back and neck pain; and hypertension. Beginning on the established onset date of disability, March 1, 2010, Caldwell has had the following severe impairments: carpal tunnel syndrome; fibromyalgia; back and neck pain; degenerative disc disease of the lumbar spine; irritable bowel syndrome; and vertigo (20 C.F.R. 404.1520(c) and 416.920(c)).

4. Since the alleged onset date, Caldwell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, … prior to March 1, 2010, the date Caldwell became disabled, she had the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit four to five hours total in at an eight-hour workday; stand and walk a total of two to three hours in an eight-hour workday; alternate sitting and standing at will; frequently balance; occasionally stoop, crouch, climb, and reach; and never kneel or crawl.

6. Beginning on March 1, 2010 Caldwell had the residual functional capacity to lift and carry up to 10 pounds; sit 30 minutes; stand and walk for 15 minutes at one time and for 60 minutes total in an eight-hour workday; alternate sitting and standing at will; frequently balance; occasionally stoop, balance, and raise the right arm over shoulder level; frequently raise the left arm over shoulder level; occasionally be exposed to dangerous equipment, motor vehicles, dusts, smoke, or fumes; limited distance vision; occasionally need to elevate both legs; and be expected to miss four or more days of work per month.

7. Since December 31, 2006, Caldwell has been unable to perform any past relevant work (20 C.F.R. 404.1565 ad 416.965).

10. Prior to March 1, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Caldwell is not "not disabled" whether or not she had transferable job skills. Beginning on March 1, 2010, Caldwell was unable to transfer job skills to other occupations (See SSR 82-41 and 20 C.F.R. 404, Subpart P, Appx. 2).

11. Prior to March 1, 2010, considering Caldwell's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed (20 C.F.R. 404.1569, 401.1569a, 416.969, and 416.969a).

12. Beginning on March 1, 2010, considering Caldwell's age, education, work experience, and residual functional capacity, there were no jobs that exist in significant numbers in the national economy that she could have perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(a), and 416.966).

13. Caldwell was not disabled prior to March 1, 2010, but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

14. Caldwell was not under a disability within the meaning of the Social Security Act at any time through December 31, 2006, the date last insured (20 C.F.R. 404.315(a) and 404.320(b)).

(Id. at 28–34.)

On October 17, 2013, the Appeals Council denied Caldwell's request for review of the ALJ's decision, thereby rendering that decision the final decision of the SSA. (Id. at 5.) This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II.     Review of Record

On the alleged onset date of December 31, 2006, Caldwell was 39 years old. (A.R. 81.) Prior to her alleged onset date, Caldwell held jobs as a materials handler/day laborer in a printing factory, insurance clerk, machine cleaner, and in 2006, she briefly tried to work at the Dollar General Store as a sales clerk for 20 to 30 hours a week, but quit after a few months because she "was having too much pain." (Id. at 45, 59–60.) As the ALJ determined Caldwell was disabled on March 1, 2010 and unable to work (Id. at 33), the dispute at this stage centers on whether she was disabled—due to carpal tunnel syndrome in both hands, fibromyalgia, bulging discs in her back, arthritis in her neck, nerve damage throughout her body, high blood pressure and hearing

loss in both ears (Id. at 170)—prior to that date and after the March 1, 2006 alleged onset date. Consequently, the review will be confined to records during that time period.

Records from 2002 note that Caldwell had a past medical history of carpal tunnel syndrome and bipolar disorder, but describe no specific symptoms or testing confirming same. (Id. at 226.) Records from 2004 note a past medical history "significant for fibromyalgia" but, again, describe no specific symptoms or testing confirming same. (Id. at 228–31.) This continues in 2005. (Id. at 233–35) The first objective diagnosis of pain is on July 6, 2006, when Caldwell visited the emergency room complaining of left arm pain and neck and finger swelling and the physician assessed her with impingement syndrome in the left shoulder after finding "decreased abduction secondary to pain. Pain and radiculopathy down left arm although not significant distal parasthesias." (Id. at 237.)

While there appear to be records from other doctors, including her general practitioner, Dr. McConnell (Id. at 48), from 2000 through 2006, these records are largely handwritten and illegible. (Id. at 266–85.) However, Dr. McConnell notes dizzy spells throughout 2009 that might be related to her blood pressure or medications prescribed to treat the same. (Id. at 267–8.) On July 10, 2006 he noted a "history of LBP [lower back pain] and 'bulging disks as well as fibromyalgia" as well as "decreased ROM [range of motion] of neck . . . cervical disk, hypertension" and instructions "to stay off work til 7-17-06." (Id. at 277.) On July 12, 2006, Caldwell saw Dr. Terry Hill, complaining of neck pain beginning July 4, 2006. (Id. at 355.) Dr. Hill noted that Caldwell said "she was seen by a specialist at St. Thomas years ago and x rays were done and she was told she had arthritis in her neck[,]" however this x-ray is not in the record. (Id.) During that visit, Dr. Hill found Caldwell's neck was "sore to palpation" with "trapezius muscles bilat. tight and tender to palpate" and his impression was "cervical myalgia/radiculopathy on L?" (Id. at 355–56.) An MRI

of her neck was planned to rule out compressive radiculopathy (Id. at 356), and was performed in

July 15, 2006, finding degenerative disc disease, cervical spondylosis, and spurring (Id. at 357.)

Caldwell saw Dr. McConnell again on January 20, 2009 for what she reported as "neck pain" and

what he determined was a "spasm in left neck muscles." (Id. at 272.) No other records pertaining

to Caldwell's alleged disabilities pre-date 2010.

### III.    Conclusions of Law

#### A.  Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence

supports that agency's findings and whether it applied the correct legal standards. Miller v.

Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than

a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v.

Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports

the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever

in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636,

641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's

decision must stand if substantial evidence supports it, even if the record contains evidence

supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468,

473 (6th Cir. 2016 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case de novo, resolve conflicts in evidence, or

decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012)

(quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to

follow agency rules and regulations, the decision lacks the support of substantial evidence, "even

where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

## B. Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments

cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Weighing Medical Source Evidence

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence.  Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011).  The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards.  In Gentry v. Commissioner of Social Security, the Sixth Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513.  The second is known as the "treating physician rule," see Rogers, 486 F.3d at 242, requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012).  The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone."  20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012).  Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors.  Rogers, 486 F.3d at 242.  In all cases, the treating physician's opinion is entitled to great deference even if not controlling.  Id.  The failure to comply with the agency's rules warrants a remand unless it is harmless error.  See Wilson, 378 F.3d at 545–46.

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. Id. at 724 (citing Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. Gentry, 741 F.3d at 729 (citations omitted); Grubbs v. Comm'r of Soc. Sec., No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

### D. Caldwell's Statement of Errors

#### 1. The ALJ's RFC Determination for the Period Prior to March 1, 2010 is Unsupported by Substantial Evidence.

Caldwell contends that the RFC is not supported by substantial evidence for two reasons. First, Caldwell argues that the ALJ erroneously found that her neck impairment was not supported by objective testing although there was an MRI of her cervical spine taken in July 15, 2006 that showed degenerative disc disease, cervical spondylosis and spurring. (Doc. No. 16, p. 13.) The Commissioner argues that the ALJ actually did find Caldwell had neck and back pain at step two

of the sequential evaluation. (Doc. No. 17, p. 5.) However, the Commissioner aptly observes that the mere diagnosis of impairment does not indicate functional limitations caused by the impairment. (Id. (citing <u>Young v. Sec's of Health & Human Servs.</u>, 925 F.2d 146, 151 (6th Cir. 1990)).) Indeed, the mere presence of neck pain—even if it is supported by objective testing— does not, without more, establish that Caldwell was limited by it. Consequently, Caldwell's argument fails.

Caldwell next argues that the ALJ improperly afforded weight to doctors' opinions issued after March 1, 2010, the date upon which the ALJ determined Caldwell was disabled, to determine that she was not disabled prior to that date. (<u>Id.</u> at pp. 13–14.) Specifically, Caldwell claims that great weight should not have been given to Dr. Bruce Davis, who rendered an opinion based on a February 7, 2011 consultative examination that assessed "current limitations only[.]" (Doc. No. 17, pp. 14–15.) However, Davis' assessment mirrors that of Dr. McConnell, her general practitioner, who offered medical source statements concerning the severity of Caldwell's symptoms since March 2010 and to whom the ALJ afforded significant weight. (A.R. 48, 345–6.) Caldwell claims that "the ALJ should have re-contacted Dr. McConnell to clarify his opinion regarding the severity of Plaintiff's symptoms prior to March 2010." (<u>Id.</u> (citing 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1), <u>Daniels v. Astrue</u>, 2010 U.S. Dist. LEXIS 13613, 6 (E.D. Ky. Feb. 17, 2010)).) 20 C.F.R. § 404.1512(e)(1).

The burden lies with the Caldwell to show she is disabled. <u>Ferguson v. Comm'r Soc. Sec.</u>, 628 F.3d 269, 275 (6th Cir. 2010). The ALJ's duty to recontact a treating physician is not triggered unless there is ambiguity in the record or the record is inadequate to allow for proper evaluation of the evidence. 4 Soc. Sec. Law & Prac., § 52.23; <u>see also</u> <u>Ferguson</u>, 628 F.3d at 274 (ALJ not required to recontact claimant's treating psychiatrist before discounting her opinion that claimant

was disabled because the psychiatrist's opinion was not supported by the objective medical evidence). Here, the ALJ actually agreed with Caldwell's treating physician, that Caldwell was disabled in 2010. (A.R. 33.) Moreover, Caldwell only requested records from Dr. McConnell "from 8/7/10 to Present" (A.R. 339) and Dr. McConnell made substantially the observation in an assessment dated February 6, 2012 (Id. at 346). This indicates that there was neither the ambiguity nor the indication of inadequacy in the record to trigger an ALJ's duty to recontact. This argument is without merit.

### 2. The ALJ's Credibility Determination is Unsupported by Substantial Evidence.

Caldwell claims that the ALJ erred by not finding her statements concerning the intensity, persistence and limiting effects of her symptoms "credible prior to March 1, 2010 to the extent they are inconsistent with the above residual functional capacity assessment." (Doc. No. 16, p. 16.) First, Caldwell claims that the ALJ drew unfavorable inferences about her conditions because of her inability to afford treatment. (Id. at pp. 16–17.) However, the ALJ made no reference to Caldwell's failure to follow the prescribed treatment. (Doc. No. 17, p. 7.) Likewise, Caldwell's second argument—that the ALJ deemed her not credible because of the absence of objective testing confirming neck-related impairment—fails because, as discussed *supra* 8, the ALJ did not make that finding. (Doc. No. 16, p. 17.)

Caldwell also claims that the ALJ improperly discounted her own statements as unsupported by the evidence. (Id. at p. 17.) She argues that the ALJ must consider her "allegations concerning the intensity and persistence or pain or other symptoms" with objective evidence as only one factor to be "considered in the context of all the evidence" and that the ALJ failed to do this with respect to the severity of her impairments as it relates to her ability to sit and stand during a normal weekday prior to 2010. (Id. at pp. 17–18 (citing SSR 96-7p).) Caldwell does not cite

what evidence, other than her own statements, the ALJ failed to consider.  (Id.)  The Commissioner correctly observes that Caldwell's "subjective complaints regarding her own symptoms do not, on their own, provide conclusive evidence of disability."  (Doc. No. 17, p. 8 (citing 42 U.S.C. §423(d)(5)(A); 20 C.F.R. § 416.929).)  The ALJ enumerated several of Caldwell's symptoms and supporting objective evidence of same and accurately noted the absence of documentation of "ongoing problems" with fibromyalgia and carpal tunnel syndrome prior to 2010.  (A.R. 30.) Indeed, Caldwell's medical records reflect that, prior to 2010, Caldwell was diagnosed with these symptoms, but her medical records do not reflect sitting and standing limitations.  (A.R. 225–256, 268, 271–2, 277, 354–7.)  Therefore, the ALJ's failure to fully credit Caldwell's statements regarding her symptoms is not reversible error, given the absence of any corroborating medical evidence.

Finally, Caldwell claims that the ALJ erroneously found that her "statements concerning the intensity, persistence and limiting effects of these symptoms 'are not credible prior to March 1, 2010, to the extent they are inconsistent with the above residual functional capacity assessment.'" (Doc. No. 16, p. 18 (citing A.R. 30.)   In support of her argument, Caldwell cites Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012), wherein Judge Posner held that an ALJ finding with identical language was "meaningless boilerplate."  (Doc. No. 16, p. 18.) In Bjornson, Judge Posner held that this boilerplate was problematic because it "implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards."  Id. 671 F.3d at 645.  However, Caldwell provides no concrete examples of how the ALJ actually did this in the instant case.  Without more than cites to case law absent citation from the record, the Court cannot accept this argument.

### 3.   The ALJ Erred at Step Five by Relying on Vocational Expert Testimony Offered in Response to an Incomplete Hypothetical.

Caldwell claims that the ALJ erred by relying on vocational expert testimony in response to an incomplete hypothetical, that did not take into account all of her symptoms, to conclude that "prior to March 1, 2010 . . . there were jobs that existed in significant numbers in the national economy that [she] could have performed." (Doc. No. 17, p. 18 (citing A.R. 32).) Presumably Caldwell was referring to the ALJ's finding that she could perform the following occupations: hand mounter of photos (DOT 976.684-018); document preparer (DOT 249.587-018); and toy stuffer (DOT 731.685-014). (A.R. 33.) The record reflects that the vocational expert identified these as occupations available to Caldwell in response to the following hypothetical:

> Assume a person can lift, push, pull and carry up to 20 pounds occasionally, with sitting no more than four or five hours in an eight-hour workday, standing and/or walking no more than two or three hours in an eight-hour workday, alternating between sitting and standing, lifting and carrying is no more than 20 pounds occasionally, 10 pounds frequently, she can frequently balance, occasionally stoop, crouch, climb, and reach, and she can never kneel or crawl. She has moderate limitation in the ability to relate to supervisors, coworkers, and the general public.

(Id. at 62–3.) The only specific objections Caldwell made regarding the RFC were that the ALJ (1) erroneously found that her neck impairment was not supported by objective testing although there was an MRI of her cervical spine taken in July 15, 2006 that showed degenerative disc disease, cervical spondylosis and spurring and (2) the weight accorded to Dr. Davis and Dr. McConnell concerning the onset of her disabilities. (Doc. No. 16, pp. 13–15.) As discussed *supra* 8–9, these arguments are without merit. Caldwell has not presented the Court with any valid reason to discount the completeness of the hypothetical, her argument fails.

## IV.    Recommendation

For the reasons explained above, Caldwell's Motion for Judgment on the Administrative Record (Doc. No. 15) is **DENIED** and Plaintiff's Complaint is hereby **DISMISSED.**

An appropriate Order will be entered.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE